# ISAAC COOK

*v.*

# JEHIEL F. NORTON *et al.*

43  391
143  286
43  391
179  65

1. CLAIM AND COLOR OF TITLE — *what constitutes.* Claim and color of title exists where the deed, upon its face, purports to convey the fee, and the grantee goes into possession under it, and accepts and holds it in his own right, and as an owner of the fee.

2. STATUTES — *recording laws not regarded — party having color of title — limitation will run in favor of — notwithstanding notice of adverse claim.* Under the act of 1839, the recording laws will not be regarded. Limitation laws do not proceed upon the theory of the absence of notice of an adverse claim to the premises, and hence, the limitation will run in favor of a party having claim and color of title, although he may have actual notice of an adverse claim by record, or otherwise.

3. TAX RECEIPT — *when fatally defective — as showing payment of taxes.* A tax receipt which simply shows, that " dollars " were received, and fails to state that, whatever amount was received, was in full of the taxes assessed, and there is no character opposite the figures to indicate what they are designed to represent, is fatally defective.

4. STATUTES — *seven years limitation act.* Where a party desires to avail himself of the seven years limitation act, he must show payment of all taxes legally assessed upon the premises, for the period of seven successive years, with claim and color of title.

5. TAX RECEIPT — *when will be considered sufficient — as showing payment of taxes.* A tax receipt, exhibited by a party claiming under the seven years limitation act, which simply names the year for which the taxes were paid, without giving the day or month when it was given, is sufficient as showing the payment of the taxes assessed for that year, it being one of the seven years relied upon to complete the bar of the statute.

6. And where such receipt showed assessments upon several tracts of land, the amount assessed to each being carried out into a common column, and the character denoting " dollars," is prefixed to the first amount stated in the column, it must be understood as intended to be repeated as to each amount ; and, although such receipt fails to give the sum paid, but simply states that " dollars " were received in full for the taxes of that year, it is sufficient as evidence showing payment, the " dollar " mark being prefixed to the sum stated at the foot of the column showing the gross sum assessed upon all of the tracts, and such sum being equal to the sum obtained by adding together the figures given in the column headed " total."

7. STATUTES — *limitation act of 1835 — what necessary to bar the right of entry.* Section eleven of the limitation act of 1835, requires that posses-

sion shall be held by actual residence on the premises, having a connected title in law or equity, deducible of record from the United States, or this State, or the officers therein enumerated.

8. And this section cannot be invoked in aid of a party, who, although he may have a connected title in law, deducible of record from this State, is unable to show actual residence on the premises for the period of seven successive years, by his ancestor or himself.

APPEAL from the Superior Court of Chicago.

The facts in this case are sufficiently stated in the opinion.

Mr. W. T. BURGESS, for the appellant.

Messrs. ARRINGTON & DENT, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of ejectment, brought by Isaac Cook, in the Superior Court of Chicago, against Jehiel F. Norton, Emily M. Norton, his wife, Grace J. Clarke and Julia Wilkie, to recover a portion of two lots in the city of Chicago. Two declarations were filed, each against a portion of the defendants, and by consent of the parties, the causes were afterward consolidated. It appears that James Ryan was the purchaser from the State, of the premises. His patent bore date the 15th of September, 1845. He had previously, on the 20th of May, of that year, sold to appellant one-third of the premises, for which he had received the pay. He, at the time, executed a contract for a conveyance, when he should receive a patent. It was recorded on the 23d of May, 1845, and Ryan conveyed to Cook on the 10th of October, 1845, by a deed of that date.

But on the 14th of August, 1845, one Ballingall recovered a judgment against Ryan, in the County Court of Cook county, which became a lien on Ryan's two-thirds of the premises. On the 21st of October following, he caused an execution to be issued, and had it levied on Ryan's interest in the lot. On the 19th of November, 1845, Ryan paid $100, which was indorsed as a credit on the execution. On the 8th day of April, 1846,

all the right, title and interest of Ryan in the lot was sold under the execution, to Ballingall, and on the 13th of the same month, a certificate of the sale was filed in the recorder's office.

On the 30th of July, 1846, Cook conveys to one Smith his one-third of the lot, and on the 3d of October following, Ryan conveyed to Wadsworth, Dyer & Chapin, his two-thirds, and they, on the 24th of the next November, conveyed to Smith their two-thirds acquired from Ryan, and Smith thereby became the owner of the whole lot, subject to Ballingall's sale of Ryan's interest of two-thirds of the lot, the time for redemption not having then expired. On the 15th of December, 1846, Smith contracted to sell the lot to Lewis W. Clark, and on the 3d of the following April, conveyed it to him by deed. Clark died in March, 1855, leaving his widow, Emily M., since married to defendant Norton, and an infant child, Grace J. Clark, who had arrived at age when the suit was brought.

On the 29th of September, 1854, Ballingall sold by quit-claim deed, his interest in the premises, the premises not having been redeemed. Cook, in July, 1860, applied to the Superior Court, into which the County Court had merged, by petition for a deed from the sheriff on Ballingall's purchase, which was ordered, and afterward made by the sheriff to Cook; it was executed on the 24th of July, 1860, under which he claims title, and seeks to recover two-thirds of the lot.

It is claimed, that Clark entered into possession of the lot, and paid taxes for seven successive years, from 1847 to 1853, inclusive, under claim and color of title made in good faith. A number of tax receipts were read in evidence on the trial in the court below. After hearing the evidence, the court found the issues for defendants, a jury having been waived, and rendered judgment against plaintiff, from which he prosecutes this appeal.

According to the uniform decisions of this court, the deed from Smith to Clark was claim and color of title. It, on its face, purported to convey the fee, and Clark went into possession under it, and accepted and held it in his own right, and as an owner of the fee. This court has also uniformly held, that

under the act of 1839, the recording laws will not be regarded; that limitation laws do not proceed upon the theory of the absence of notice of an adverse claim to the premises. The act itself makes no reference to notice of an adverse claim. So, being within the provisions of the limitation laws, a party need not show, that he acquired title or occupied the premises without notice that they were claimed by another. And having brought himself within the provisions of the act, the bar of the statute will not be destroyed, by proving that he had either actual or constructive notice of an adverse claim. To give the statute such a construction, would be to hold, that the statute could never run against the better title of record, where there was actual notice, or notice of such facts as should put a purchaser upon inquiry. We are aware of no decision, and it is believed that none exists, which holds, that notice of an adverse claim will prevent the running of the statute, or will defeat its bar, when in other respects, the party has brought himself within its provisions. This, then, is claim and color of title, and Clark's heirs could rely upon it as such in this action, as they succeeded in this respect to all of the rights of their ancestor.

The question, then, presents itself, whether appellees have shown possession and payment of taxes, for seven years successively under their color of title. It appears, that Clark had the lot inclosed and buildings erected on the premises, as early as in the autumn of 1847, and, while the evidence is not altogether satisfactory, it might probably be inferred, that he continued in possession until the time of his death. The evidence is not definite as to whom the tenant held under, who was in possession when the buildings were erected and the lot inclosed, in the fall of 1847. Norton speaks of his living there with his family, but does not say that he was Clark's tenant. He also says, that Clark had possession of the lot until his death, but fails to state when the possession commenced. He also states, that Clark had tenants on the lot, but when, and how long, does not appear. But, even if it could not be inferred that he had the actual continuous possession of the lot for seven

successive years, still, as the case will have to be remanded, the proof, as to possession, can be supplied on another trial.

Appellees have failed to prove seven years' payment of taxes continuously, under the color and possession, if it existed. The first receipt in the series bears date December 3, 1847, and is for the taxes of that year. It is, however, fatally defective in not stating any sum of money received. An inspection of the original receipt, fails to disclose the amount of taxes paid. It simply says, that "dollars" were received for the city and school taxes, assessed by the city in the year 1847. It does not state, that whatever amount was received was in full of such taxes. Nor do we find any character opposite the figures, to indicate what they are designed to represent. The receipt for the county, State and road tax, is not subject to this objection, as it specifies the sum paid, and states, that it is in full for those taxes. But the statute requires the party desiring to avail himself of the bar of the statute, to pay all taxes legally assessed on the property for the period of seven successive years. Now, we see that the city and school taxes, levied for the year 1847, were not paid, or if so, the proof is not contained in this record. Then the taxes for that year were not all paid, and, hence, the payment of taxes did not concur with color of title and possession, when the receipt was given. We then have to look to some future payment, to ascertain when the statute began to run.

The receipt for the State, county and road taxes, levied for 1847, bears date on the first day of July, 1848. This was, therefore, the time when all the requirements of the statute fully concurred for the first time, and hence the statute then began to run. Taking that, then, for the starting point for the payment of taxes, was there seven years successive payment of all taxes proved? In February and June of 1854, Clark paid the taxes of 1853, but the lot was sold for the taxes of 1854, leaving the payment of but six successive years' tax, when the statute requires seven. This does not present a bar to the recovery.

As the case will be remanded, it may be that we should consider the sufficiency of the receipt for the State, county and

town tax, assessed for the year 1850. It does not state on what day or month it was given, but it appears to have been in 1851; from this it seems that the taxes were paid within the limits of seven years, relied upon by appellees, and this is sufficient. It, however, fails to give the sum paid. It has a blank where the sum was intended to have been written, followed by the word "dollars," and a blank for the cents. It was a printed blank, and the treasurer, through his neglect, no doubt, failed to fill in the sum to which the taxes on the several tracts amounted in the aggregate.

It, however, states that "dollars" were received in full, for State, county and town taxes, levied for the year 1850. The right hand column in which the total tax against each tract of land was assessed, has the usual character denoting "dollars," placed at the left side of the top figures, and the two right hand figures are separated from those on the left by a perpendicular line, thus designating the number of cents. This lot is the second in the receipt, and while the dollar character is not placed before the amount, we must understand that it was intended to be repeated. Again, the dollar mark is prefixed to the gross sum at the bottom of this column, thus showing the number of dollars which was assessed upon all the lots embraced in the receipt; and when the figures in the column headed "total" are added together, we see that it makes the gross sum in dollars and cents, placed at the foot of the column. It thereby appears, that the figures extended opposite to each lot, represent the amount of taxes chargeable against it for the year specified. We are of the opinion that this receipt was properly admitted in evidence.

Nor do the facts contained in this record show, that the entry is tolled by the eleventh section of the chapter entitled "Limitations." That section requires that possession shall be held by actual residence on the premises, having a connected title in law or equity deducible of record, from the United States or this State, or from the officers therein enumerated. Although appellees may have shown a connected title in law, deducible of record from this State, still there is not evidence of actual

residence, for the period of seven successive years, by their ancestor or themselves. This section cannot, on the proof in this record, be invoked as a bar to appellant's action. For the errors above indicated, the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*