Lake, Ch. J.
This case is brought here as an original proceeding, to test the legality of certain taxes levied upon the plaintiff’s lands, and which the county treasurer threatens, and is about to collect by a seizure and sale of its property, as he is directed by law to do.
Relief is sought against two distinct kinds of taxes, the frst in order being what is known as the land road tax, and the second, those which were supposed to have been voted in the several school districts of the county, and were certified to the county clerk for entry upon the tax duplicate.
*303 By a stipulation, the facts of the case are all agreed upon. As to these, therefore, we can have no trouble, and it only remains for ns properly to apply the law ajDplicable thereto, and thus determine whether or riot the plaintiff is entitled to the relief prayed.
And first, of the road tax. The objection urged against its validity is radical, and goes to the very foundation ■on which it rests. No infirmity is claimed to exist in consequence of any omission of duty on the part of any officer charged with the levy, or the collection of taxes, but it is asserted that the statute which directed its imposition was unauthorized and void. This statute, section thirty, of the revenue act, among other things, provides £l for roads a poll tax of two dollars or one day’s work, and a land tax in any rate not exceeding four dollars to the quarter section, to be paid in money, or in labor at the rate of two dollars per day, at the option of the person so taxed.”
Three distinct objections are made to this tafirst, ■ that it lacks uniformity; second, that there was no necessity for the tax; and third, that no provision is made for notice to non-resident land owners as to when, and where, such tax may be worked out, which, as to residents, is required to be given.
Our attention has been directed to a large number of authorities which support the position taken by plaintiff’s counsel, that a specific tax, or in other words a tax rated by the acre, or superficial area, is unauthorized, ' and cannot be enforced. But we have found, without a single exception, that in those states where it has been so held, there is some constitutional restraint put upon the power of the legislature, whereby the burdens of the government are required to be imposed in some particular manner, and in respect of which they are left no discretion whatever.
For instance, in Ohio, where the new constitution *304 declares that “ laws shall be passed taxing by a uniform rule all moneys, credits, etc.,” and also, “all real and personal property, according to its true value in money,” it was held, that while under the former constitution of that state which contained no similar provision, there was no restraint upon the legislative will in this respect, and “the whole matter of taxation was committed to the discretion of the general assembly,” and that the levies “ might be made upon such property and in such proportion as that body saw fit,” under the provision above quoted, this could no longer be done, and this positive injunction must be obeyed. Zanesville v. Richards, 5 Ohio State, 589. So, too, in Georgia, a constitutional provision that taxation shall be ad valorem, precludes the taxation of cattle by the head. Livingston v. Albany, 41 Geo., 21. And in several other states, we find similar checks upon the discretion of the legislature, but for which that body is the sole judge of the necessity for, and the extent of taxation, and also of the sources from whence the revenues shall be drawn. Scofield v. Cleveland, 1 Ohio State, 128. Hill v. Higdon, 5 O. S., 243. Gordon v. Cornes, 47 N. Y., 608.
The principal' point urged on the argument under the head of want of uniformity is, that the tax is for a public purpose, to be expended throughout the county, and yet is imposed only upon a portion of the taxable property therein, not even upon all the real estate within the limits of the county, which, in respect of this tax, is to be regarded as a single taxing district.
It is true, that it is not the practice to impose it upon town or city lots; nor does the law contemplate that it shall be so levied. We think a fair, reasonable construction of the several sections of the revenue act warrants this conclusion. It is true, that the word “land,” in its most comprehensive sense, would include town lots, and in fact every other portion of the earth’s surface within *305 tlie county. But this, evidently, is not the meaning here intended.
In other sections of the revenue act, we find specific exemptions of real property from the burdens of taxation, which the legislature, undoubtedly, were authorized to make. So, too, in section 34, direction is given to the county clerk as to what the tax lists must contain, their order, etc. In the second paragraph it provides that, 11 ail the taxable lands in the cov/nty” shall be included; and, in the third paragraph, that “ ail the' city or town lots in each city or town in the county” shall be given.
Again, in section seventeen, provision is made for the taxation of the road bed, and other property, of railroad companies, and, also, certain property of other corporate bodies. And the last clause of this section declares that “ any real estate belonging to, or represented by, the capital stock of any corporation * * * shall be omitted by the assessor from the return of taxable lands and town lots.”
Here we have the word “lands” used in connection with, and in contradistinction to, “town lots,” which but strengthens our conviction that by tlie term “land tax,” as used iii section thirty, neither town nór city lots, nor lands lawfully occupied for right of way by railroad companies, etc., were designed to be included. But we think the word does include all other real property within the county not •otherwise specially exempted from its operation, whether lying within the corporate limits of a city or town or not. In the case of lands lying within a city or town, and not subdivided into lots, they are clearly within the operation of the statute, and subject to the tax.
It is quite manifest that this tax is required to be imposed upon all of a certain class of real- estate within the. county, by whomsoever it may be owned, unless falling within some one of the authorized exemptions. It reaches all that comes within the meaning of the word “lands,” in *306 the restricted sense in which it is here used. This may be properly designated the “selection” of the kind and class of property upon which this burden shall rest. And this, when taken in connection with the “rate,” or rule by which the levy must be made, completes the legislative “apportionment ” which is the essence of a legal tax.
But, say the plaintiff’s counsel, this apportionment is according to no just rule; it is arbitrary, and operates oppressively; it imposes the like burden upon all lands, whether they be worth three or three hundred dollars per acre. This is all true, and hopeless indeed would be the task to undertake to show that such legislation is founded upon any fair rule or equitable principle whatever. These are considerations which, under the constitution in force, when the taxes complained of were levied, could only be properly addressed to the legislature. It was for that body, not the courts, to determine what the rule of apjDortionment should be. The People v. The Mayor, 4 Comst., 419. N. M. R. R. Co. v. McGuire, 49 Mo., 490. Powers, In re, 25 Vt., 261. Cooley on Taxation, and cases there cited.
It was contended on the argument, however, that if the law should be upheld, then it was evident that the word “rate,” as used in connection with this tax, should be construed as meaning a per centage on the valuation of the land, so that the amount of tax levied upon each particular tract should be proportioned strictly according to its assessed value.
There is no doubt that in many places in the revenue act, this word is used in the sense here claimed for it, and that where such is the case an ad valorem assessment or levy is imperatively required. But in this connection it is manifestly susceptible of a different meaning — of the one which has obtained in practice, viz.: that a legal subdivision of land known as a quarter section, or one hundred and sixty acres, being taken as the unit of *307 quantity, whatever may be the ratio between it and the tax placed thereon, the same relative proportion must be observed as to any other given quantity, either more or less, that falls within the apportionment. This, it seems to us, is the only rational construction" that can possibly be given to the language here employed.
For these reasons we must hold that under the constition in force, when this tax was imposed it was a valid levy. And although we may think that, in framing the statute in question, there was a manifest lack of wisdom, and a failure to recognize those just and equitable principles which ought to obtain in the apportionment of all the burdens of government., this is no cause for judicial interference. It is a matter which, until our new constitution went into operation, was left entirely to the judgment and discretion of the legislature, to which body-alone applications for relief could be properly addressed.
There were several other minor objections urged on the argument, but not mentioned in the petition, as grounds of complaint, which we have not considered it necessary to notice at any length. For instance, that in certain of the road districts no expenditure of money or labor was necessary for the purpose to which this tax is devoted; and that at least one-third of the levy could, at the option of the commissioners, be expended outside of the particular road district where raised. These are matters entirely yvithin the control of the legislature, and with which the courts can have nothing whatever to do. The tax should be regarded, and in truth is, a county levy; it is the same in all the road districts. These districts are created, not as special and distinct taxing districts, but rather to insure a more equal and economical expenditure of the funds raised for road purposes than could be expected if this were intrusted entirely to the county commissioners, or to a single road supervisor elected for the whole county.
*308 The same is true, also, in respect of the provision found in section eight of the road act, requiring each road supervisor to notify all persons owning lands, and living within his district, as to when and where such tax could be worked out, while no notice is provided for nonresident owners. The validity of this tax does not depend upon this notice being given. This is a regulation by which it was intended quite as much to insure the proper improvement of highways as to favor or benefit the land owner. If observed, it operates upon all within the j urisdiction of the supervisor, — upon those whom it would be reasonable to suppose were in a situation, and might desire to work out the tax.
But if the tax be not worked out, even although the supervisor failed to give the proper notice, payment must made in money. And nothing but the production of the certificate of the proper supervisor of labor having been actually performed, can justify the treasurer in not making the collection, or will operate as a release of the property from the lien of the tax. The statute authorized the plaintiffs to work out these taxes by labor performed upon the highways, and had it appeared that timely offers to do so had been made to the proper supervisors the result might have been different.
As to the second class of taxes against which relief is sought, in the view we take of the petition, a very few words will be all that is necessary.
While we are very strongly inclined to the opinion that, inasmuch as the powers of school districts, and school boards, are purely delegated, exceedingly limited, and strictly defined in the statutes granting them, if their records fail to show that a tax voted is one which they are authorized to levy, its collection cannot be enforced; yet the case as made by the petition is not brought within the operation of this rule. There is no allegation that such is the case in respect of the taxes in *309 question, and in the absence of such allegation the legal presumption is that the facts would not warrant it.
The allegations of the petition on this point are confined to what is shown by the tax duplicate, and the reports sent up to the county clerk by the district boards. There is no reference made to what was done, or omitted, by the several districts, or the district boards, in the imposition of a single tax. Where there is an omission to state a material fact, one necessary to show a cause of action, the presumption against the pleader is that it does not exist.
With respect to the formality of the tax duplicate, we take the law to be, that the mere failure to particularize all the uses to which the money is to be applied, will not necessarily invalidate the levy. Indeed, the form prescribed in section thirty-six of the revenue act seems to contemplate that the several items may be properly included under the head of “district school tax.”
So, too, of the report required to be made by the district board of taxes voted in the district, especially as to those authorized by section thirty-two of the school law, we do not think it was intended, nor would it be reasonable to require that an itemized statement be given of the purposes for which the funds were intended. It certainly could be of no practical use whatever, and the omission to do so could work no possible injury to any one. By section forty-four of the school law, the director is required to keep a record of all the “proceedings of the district in a book to be kept for that purpose,” and it is to this and this alone, that resort must be had to ascertain what the district has done, what taxes have been voted, and for what particular purposes they were levied. Cooley on Taxation, 247, and cases there cited.
For these reasons the preliminary injunction heretofore allowed must be dissolved, and the cause dismissed at the plaintiff’s costs.
JUDGMBNT ACCORDINGLY.