BURLINGTON AND MISSOURI RIVER RAILROAD COMPANY, APPELLEE, V. THE BOARD OF COUNTY COMMISSIONERS OF YORK COUNTY ET AL., APPELLANTS.

1. Taxes: LEVY OF. The power to levy a tax must be clearly and distinctly given by law, and if the limits fixed by the statute are transcended by levying a sum in excess of that authorized by law, such excess may affect titles acquired by a sale of the property for such illegal tax. But this will not excuse a party praying for an injunction from tendering the amount of taxes justly due from him.

2. ———: INJUNCTION. If a portion of a tax is legal and a portion illegal, if the legal can be separated from the illegal, an injunction will not be granted to restrain the collection of the entire tax.

3. ———: CONSTRUCTION OF STATUTE: SCHOOL TAXES. The act approved February 19, 1875, to amend section 31 and other sections of the school law, limits the amount of school district taxes for all purposes to twenty-five mills on the dollar on the assessed valuation of the property of a school district.

4. Pleading: PETITION. Where there is an omission to state a material fact in a petition, one necessary to show a cause of action, the presumption is that it does not exist.

5. Land Road Tax. Where a land road tax of $4.00 per quarter section for the year 1875 was levied before the constitution took effect—*Held*, that such taxes were valid, being expressly excepted from the provisions of the constitution.

APPEAL from a decree rendered in the district court for York county, enjoining the collection of taxes to pay interest on county bonds, and taxes to pay school

bonds issued by several districts of the county, all of which were levied on lands belonging to plaintiff. The court below made the injunction perpetual, and defendants appealed.

*Edward Bates*, for appellant.

I.   If in this levy to pay interest on bonded indebtedness, there should be found some excess, this will not vitiate the whole tax—the good can be separated from the bad by computation. *Frazer v. Seibern*, 16 O. St., 615. *Obryne v. Mayor Savannah*, 41 Ga., 331. *O'Kane v. Treat*, 25 Ill., 458. *Brisco v. Allison*, 43 Ill., 291. *City of Ottawa v. Barney*, 10 Kan., 270. *State v. Allen*, 43 Ill., 456. *Allen v. Peoria R. R. Co.*, 44 Ill., 85. *People v. Nichols*, 49 Ill., 517. *Colman v. Anderson*, 10 Mass., 104. *State v. McClurg*, 3 Dutch., 253. *Swinney v. Beard*, 71 Ill., 27, 92. *Jones v. Seward Co.*, 5 Neb., 561.

II.   Irregularities do not vitiate taxes in courts of equity. *City of Lawrence v. Killam*, 11 Kan., 499. *Mix v. People*, 72 Ill., 241. *Swiney v. Beard*, 71 Ill., 27. Cooley on Taxation, 219, 220. *State v. Allen*, 43 Ill., 456. *Kansas Pacific Railway v. Russell*, 8 Kan., 558.

III.   There is a radical distinction between this action brought to enjoin a tax and a case at law brought by ejectment, where the land of a citizen has been sold for tax. In this, he who "asks equity must do equity." But at law, where a party is divested of his property, it must be by "due process," and a strict compliance with all the provisions of the law—is a prerequisite. Also, after a sale, where there is an illegal excess after the land is sold, it is too late to separate the good tax from the bad. *Frazer v. Seiburn*, 16 Ohio St., 545.

*T. M. Marquett*, for appellee.

I.   There can be no implied power to levy taxes. Those who levy taxes must show a law expressly empowering them to levy the same.    *State v. Shortridge*, 56 Mo., 126 and 130.

1.   The power to levy taxes must be clearly and expressly given.    *Carrollton Co. v. United States*, 18 Wallace, 71.    Cooley on Taxation, 244, 253, note 2. *May v. Cincinnati*, 1 Ohio State, 268.

2.   There must be distinct legislative authority for every tax that is levied.    *Norris v. Russell*, 5 Cal., 250.

3.   The act of 1875, page 169, makes it the duty of the auditor to determine just what taxes were due on registered bonds, and the clerk could only levy taxes for that amount.

II.   The county commissioners have no power to levy a tax for registered bonds when the auditor has made the proper certificate as to the amount to be levied to pay interest on same.    For the reasons,

1.   That the act of 1875, which is repugnant to the act which empowers the county commissioners to levy taxes for registered bonds, repeals the same.    *Wilson v. O. & M. R. R. Co.*, 64 Ill., 542, 578.    *Somerset Road*, 74 Penn. St., 63.    *People v. Van Nort*, 64 Barb., 205.

2.   The certificate of the auditor in reference to registered county bonds is jurisdictional.    *Matteson v. The Town of Rosendale*, 37 Wis., 254.    Blackwell on Tax Titles, 185.    *Wall v. Trumbull*, 16 Mich., 234.    33 Mich., 126–203.    50 N. Y., 502.    17 Mich., 437.    41 Iowa, 153.

3.   A tax must be levied by the officers designated by law.    Cooley on Taxation, 216–217. *Munson v. Miller*, 66 Ill., 383.    *Darhy v. Gun*, 50 Ill., 428.    Blackwell on Tax Titles.    *Flach v. Hughes*, 67 Ill., 384–387.

III.   The only tax that the commissioners had a right to levy to pay interest on bonds was for the $4,400.   Funding bonds being thus limited, they in violation of law assumed that the bonded indebtedness of the county was $138,000, and levied a tax to pay interest on the same of $15,069.54, when they had only power to levy a tax to pay interest on $4,400.   There is no law for this levy.  *Cumberland County v. Webster*, 53 Ill., 141.   For the sake of argument admit that the county commissioners had a right to put a levy of $4,400; the blending of this lawful tax with the unlawful levy of $11,009, makes the whole levy void.  *Edwards v. Taliafero*, 34 Mich., 15.   *Freeland v. Hastings*, 10 Allen, 589.  Cooley on Taxation, 295.  *Ferton v. Feller*, 33 Mich., 199.   To hold otherwise would be to let the court levy a tax.

MAXWELL, CH. J.

This cause is brought here on appeal from the decree of the district court of York county.

The first ground of complaint set forth in the plaintiff's petition is in respect of the following action of the board of county commissioners, namely :  " The board upon examination finds the indebtedness of York county as follows :  Bonded indebtedness, $138,000.   *   *   * And the board thereupon levied the following sinking fund taxes, to-wit:   To pay interest on bonded indebtedness, fourteen mills on the dollar."

The plaintiff, after stating at an unnecessary length the facts and history of the action of the board in regard to the levy of the tax, complains that the levy of fourteen mills, so made by the board, to pay interest on bonded indebtedness of the county was without any authority of law whatever, and submits that the same is void.

It is admitted that of the $138,000 bonded debt for which the levy of fourteen mill tax was levied, forty seven thousand dollars was never issued, and to that extent there was no bonded debt of the county, and the levy was void.

It is further admitted that forty-seven thousand dollars of the remainder consists of bonds issued to the Midland Pacific R. R. Co., and that these bonds were registered in the office of the state auditor as provided and required by the act of February 25, 1875; and the evidence shows that in compliance with the requirements of the statute, on the 14th of June, 1875, the state auditor certified to the county clerk the amount of sinking fund and interest necessary for the next succeeding year to pay interest upon said bonds.

The important question now is: Has the board of county commissioners authority to levy the tax to pay the interest upon and to create a sinking fund for the redemption of bonds, so registered in the office of the state auditor?

Cooley in his work on Taxation (256), says: "It is a familiar rule that in the execution of the power to tax, the municipalities must confine themselves closely within the power conferred," and "that the provisions of the statute must be strictly pursued." See the large number of authorities he refers to. The proposition will not be controverted, that it is absolutely essential to valid taxation that the taxing officers must be able to show legislative authority for every levy of taxes. Cooley Const. Lim., 517–518. *Clark v. Davenport*, 14 Iowa, 494. *Burlington v. Kellar*, 18 Iowa, 59. *Mays v. Cincinnati*, 1 Ohio St., 273. Cooley on Taxation, 244.

Now, the fourth section of the act of February 25, 1875, requires the state auditor annually to ascertain the necessary amount for sinking fund and interest upon all bonds registered in his office, and to " certify the amount

thereof to the clerk of the county in which such bonds were issued, specifically setting forth the amount thus due and to become due for such year." And the fifth section of the act provides that " the clerk and recorder of any county, upon receiving such certified statement from the auditor of state, shall ascertain from the assessment roll of the county the amount of taxable property in such county, and what percentage is required to be levied thereon to pay said amount, and to create a sinking fund in compliance with the certificate of the said auditor, and when so ascertained shall levy such percentage upon the taxable property of such county, and place the same upon the tax roll of the county in a separate column or columns designating the purpose for which said taxes are levied, and the said taxes shall be collected by the county treasurer in the same manner that other taxes are collected." Laws, 1875, p. 170.

These provisions are jurisdictional and mandatory, and therefore, under the act, the authority to ascertain the amount of interest to be paid and to create a sinking fund to redeem registered bonds, is vested alone in the state auditor, and he must certify the amount to the proper county clerk; and the county clerk is authorized to ascertain what percentage is necessary to be levied on the taxable property of the county for the purposes aforesaid, and he is required to extend the tax so levied on the tax roll in separate columns, to be collected in the same manner that other taxes are collected. And, for aught that appears in the record of this case, the clerk may have ascertained the necessary percentage and levied the same on the taxable property of the county, and extended the tax on the tax roll as required by the law. The record is silent in this respect.

It is, however, clear that the board of county commissioners has no legislative authority whatever to levy taxes for interest on bonds registered in the office of the

state auditor. The exercise of the taxing power the legislature has given to other municipal officers; and it is not the province of this court to change the law, and transfer this taxing power to the board of county commissioners when by legislative authority it is exclusively placed in the hands of other officers. And it will not be urged that the court can exercise the taxing power, ascertain and fix the rate, and levy the tax to pay the interest upon such registered bonds; for, if the court was to attempt the exercise of such taxing power, it must necessarily include the exercise of legislative functions in order to confer upon the court the authority to exercise the power. But in *Turner v. Althaus*, 6 Neb., 73, it is said in respect of the taxation of property that if the court "attempts to classify this property into such as shall be taxable, and such as shall not, it assumes the exercise of legislative power, which belongs exclusively to the legislative department of the government.

But as the petition does not allege that the clerk did not levy the taxes in question, the presumption is that he did his duty and that the taxes were properly levied. Of the bonds in question, $44,000 were issued under the authority of a special act of the legislature, approved February 24, 1873, to fund the indebtedness of York county. Various objections are made to these bonds, but the testimony fails to show their invalidity.

It is admitted that the second installment of bonds voted to the Midland Pacific Railroad Company by said county, amounting to the sum of $47,000, is void; the company not having completed the road to the town of York within the time prescribed. This leaves $91,000 of valid bonds issued by the county.

Does the levy of fourteen mills, to apply on bonds, based on an indebtedness of $138,000, vitiate the entire tax levied for bonds, or will the plaintiff be required to

pay that portion of the tax which is legal, as a condition upon which relief will be granted?

In *Frazer et al. v. Seibern et al.*, 16 Ohio State, 617, the plaintiffs were shareholders in the First National Bank of Cincinnati, whose shares in the bank had been assessed as personal property, no deduction being made for United States bonds held by the bank, or for real estate, which was taxed against the bank itself. The court held as a condition of granting relief by injunction, that the plaintiffs should first pay to the treasurer of Hamilton county such sum as might lawfully have been assessed against the plaintiffs, or their bank, and if the parties could not agree upon the sum due, proceedings be adopted to ascertain it by the court.

In *Briscoe v. Allison*, 43 Ill., 391, the county commissioners on the twenty-eighth of January, 1865, passed resolutions offering bounties to volunteers. Afterwards, on the seventh of February, the legislature passed an act authorizing the several counties in the state to pay bounties to persons enlisting in the military service of the United States. Bounties were paid in county orders to six or eight persons who enlisted *after* the adoption of the resolutions in January and *before* the passage of the law, and about one hundred enlisted after the passage of the law. On a bill being filed to enjoin the collection of the tax, it was held that if the court " can, under the bill, ascertain the proportion that the illegal bears to the legal bonds, it could thereby be determined what portion of this tax would be illegal, and, when ascertained, the portion of the tax necessary, and which would go to pay those illegally issued bonds, should be restrained and the remainder collected." And see also: *Palmer v. Napoleon*, 16 Mich., 176. *Hersey v. Milwaukee Co.*, 16 Wis., 185. *Mills v. Johnson*, 17 Id., 598. *Mills v. Charleton*, 29 Id., 400. *Dean v. Borchsenius*, 30 Id., 236. *O'Kane v. Treat*, 25 Ill., 557.

*Morrison v. Hershire,* 32 Iowa, 271. *Corbin v. Wood-bine,* 33 Id., 297. *Shelton v. Dunn,* 6 Kans., 128. *Lawrence v. Killam,* 11 Id., 499. Cooley on Taxation, 537.

It is claimed by the plaintiff, that the amount levied, being in excess of the power to levy given to the county commissioners, is therefore entirely void. The power to levy a tax must be clearly and distinctly given by law, and if the limits fixed by the statute are transcended, by levying a sum in excess of that authorized by law, the effect may be to affect titles acquired by a sale for such illegal tax. But where a party comes into a court of equity, asking to be relieved from the payment of taxes on the ground of their being illegal, he must do equity by offering to pay the amount justly due from him, and upon this condition alone will relief be granted. *Hallenbeck v. Hahn,* 2 Neb., 426, and cases cited. The tax levied for the $91,000 in bonds is therefore held to be valid and legal, and a *pro rata* reduction will therefore be made in the assessment of fourteen mills, so levied for the purpose of being applied on said bonds. The judgment of the district court upon the first count in the petition is reversed, and the injunction heretofore granted is dissolved as to the $91,000 in bonds and is made perpetual against the $47,000 in bonds not delivered to the Midland Pacific Railroad Company.

As to the second cause of action the petition alleges that the county commissioners made a levy "to discharge bonded indebtedness of school districts." This count consists of twenty-five paragraphs, substantially alike, except as to the numbers of the districts and the amount of the levy. The first paragraph is as follows: "In school district No. 3, thirty-five mills on the dollar valuation, and the amount charged against the lands of plaintiff by virtue of said levy is $202."

Section thirty of "An act to establish a system of public instruction for the state of Nebraska," approved

February 15, 1869 (Gen. Stat., 966), provides that: " Any school district shall have power and authority to borrow money to pay for the sites for school houses, and to erect buildings thereon, and to furnish the same, by a vote of a majority of the qualified voters of said district present at any annual meeting, or special meeting." The proviso limits the amount of the debt at any one time, for money thus borrowed, to five thousand dollars.

Section thirty-one authorizes a school district at any annual or special meeting to impose a tax not exceeding ten mills on the dollar valuation, for the purpose of building a school house.

Section thirty-two provides that: " The qualified voters, when assembled at any annual or special meeting, may, from time to time, impose such tax as may be necessary to pay teachers, to keep their school-houses in repair, and to provide the necessary appendages, *and to pay and discharge any debts or liabilities of the district lawfully incurred*," etc.

Section fifty-five requires the school board, between the first and third Mondays of June of each year, *to deliver to the county clerk of each county, in which any part of the district is situated, a report in writing under their hands, of all the taxes voted by the district during the preceding year*," etc.

In 1875 section thirty-one was amended as follows: " Any school district may, at any annual or special meeting, impose a tax on the taxable property of the district in any amount not exceeding *twenty-five mills* on the dollar on the assessed valuation of the property of the district, and each tax, when voted, shall be reported by the district board to the county clerk, and levied and collected as other taxes voted by the district." Laws, 1875, p. 116.

The evident object of the amendment is to limit the amount of school district taxes raised for all purposes to

twenty-five mills on the dollar on the assessed valuation. The effect of such legislation upon vested rights does not arise in the case. *Prima facie*, the statute fixing a limit to taxation is obligatory upon the officers authorized to levy taxes, and they have no authority to transcend its limits. It is said the legislative department makes, the executive executes, and the judiciary construes the laws. Cooley on Taxation, and cases cited in note 2. And the legislature in every instance must prescribe the rule under which taxes may be levied, and grant the authority to levy the same.

On the twenty-seventh of February, 1873, an act was passed entitled " An act to provide for the registration of precinct or township and school district bonds." Gen. Stat., 883. This act makes it the duty of all precinct, or township, and school district boards and officers, to furnish to county clerks of their respective counties, a statement of the bonds heretofore issued by their respective precincts, townships, and school districts, and not already paid, the date of each bond, when, where, and to whom payable, the amount, and the rate of interest, which bonds shall be registered by the county clerk, etc.

In 1875 an act was passed to amend this act by requiring county commissioners to levy the necessary taxes to meet the accruing interest upon such bonds, and to provide a sinking fund. Laws 1875, p. 185. It is claimed by the plaintiff that the power thus conferred upon county commissioners is unauthorized, the title of the act merely providing for the registration of bonds. Even if such was the case, which we do not decide, there is no allegation in the petition that the taxes referred to, at least to the extent of twenty-five mills on the dollar valuation, were not properly levied.

As was said in the case of the *B. & M. R. R. v. Lancaster Co.*, 4 Neb., 307: " Where there is an omission to

34 .

state a material fact, one necessary to show a cause of action, the presumption against the pleader is that it does not exist."

The judgment heretofore rendered enjoining the entire tax, is reversed, and the injunction is dissolved as to the tax of twenty-five mills on the dollar on the assessed valuation, and is made perpetual against the levy in excess of that sum.

The third cause of action set forth in the petition is for an injunction against the land road tax of $4 per quarter section for the year 1875. Most of the questions involved were considered in the case of the *B. & M. R. R. v. Lancaster Co.*, 4 Neb., 203, and we regard the decision in that case as a correct exposition of the law. The taxes in question were levied before the constitution of 1875 took effect, and are not affected by its provisions, being expressly excepted therefrom by section two of the schedule. The tax was properly levied and should not be enjoined. Judgment will be entered in this court in conformity with this opinion.

JUDGMENT ACCORDINGLY.